NOT FOR PUBLICATION

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

In the Matter of                          :        Case No. 09-36729/JHW

Jeremiah Joseph Cook, Jr.                 :

               Debtor        :        **OPINION**

_____

APPEARANCES:   Neil I. Sternstein, Esq.
                 Five Aberdeen Place
                 Woodbury, New Jersey 08096
                 Counsel for the Debtor

                 Ray A. LeBron, Esq.
                 Fein, Such, Kahn & Shepard, P.C.
                 7 Century Drive, Suite 201
                 Parsippany, New Jersey 07054
                 Counsel for Indymac Bank, FSB

**FILED**

JAMES J. WALDRON, CLERK

July 1, 2010

U.S. BANKRUPTCY COURT
CAMDEN, N.J.
BY: Theresa O'Brien, Judicial
Assistant to Chief Judge Wizmur

Before the court for resolution is a motion by the Chapter 7 debtor seeking to reclassify a wholly unsecured second mortgage on his principal residence from a secured claim to an unsecured claim pursuant to 11 U.S.C. §§ 506(a) and 506(d).  Citing to the United States Supreme Court's decision in Nobelman and the Third Circuit's opinion in McDonald, the debtor contends that in the Third Circuit, "stripping off" a wholly unsecured lien must be distinguished from the "strip down" prohibited in Chapter 7 cases by the Supreme Court case of Dewsnup, and is therefore a permissible reclassification

of the mortgagee's claim.[1]  The mortgagee disagrees, contending  that a "strip

off" and a "strip down" are essentially indistinguishable and therefore equally

prohibited.  This court concludes that the dictates of <u>Dewsnup</u> do not permit

the voiding of a lien under § 506(d) in a Chapter 7 case where the claim is

wholly unsecured.  The debtor's motion to "reclassify" the second mortgagee's

wholly unsecured claim, or to void the mortgagee's lien, must be denied.


**<u>FACTS</u>**


The debtor, Jeremiah Joseph Cook, Jr., filed a voluntary petition for

relief under Chapter 7 of the Bankruptcy Code on October 7, 2009.  The debtor

listed his principal residence as 14 Fredrick Boulevard, Woolwich Township,

Swedesboro, in Gloucester County, New Jersey, with a fair market value of

$364,000.00.  The property is subject to two mortgages, both held by Indymac

Mortgages Services.  The first mortgage is in the amount of $366,216.19 and

the second is in the amount of $89,061.96.  Debtor's Statement of Intention

indicates that he intends to continue to make payments toward the first

mortgage and that he seeks to avoid the second mortgage pursuant to 11

---

[1]      While the debtor's motion is styled as a motion to reclassify the
debt from secured to unsecured status, it appears that the debtor actually
seeks to deem the mortgagee's lien as void under § 506(d).

U.S.C. § 522(f).[2]   A Report of No Distribution was filed by the Chapter 7 trustee

on November 17, 2009.

On November 12, 2009, the debtor moved to reclassify the second

mortgage held by Indymac Bank FSB[3] from a secured claim to an unsecured

claim.  The debtor presented an appraisal report which asserted an appraised

value of $364,000 for his home as of September 18, 2009, contending that the

value of the house is less than the amount due on the first mortgage, that there

is no value to support the second mortgage, and that therefore, the second

mortgage may be avoided under 11 U.S.C. § 506(d).  Indymac objected,

presenting a competing property appraisal asserting a value of $374,000 for

the property.  As well, Indymac argued that the majority of courts considering

the issue have concluded that even claims collateralized by property that has

no value to support the junior lien cannot be reclassified.  See, e.g., In re

Talbert, 344 F.3d 555 (6th Cir. 2003) and Ryan v. Homecomings Financial

Network, 253 F.3d 778 (4th Cir. 2001).

---

[2]      11 U.S.C. § 522(f), pertaining to the avoidance of judicial liens and
nonpossessory, nonpurchase-money security interests in various types of
property, does not apply to the avoidance of a real estate mortgage.

[3]      Indymac Bank FSB serves on the loan as servicer for Deutsche
Bank National Trust Company as trustee of the Home Equity Mortgage Loan
Asset-Backed Trust, Series Inds 2006-1, Home Equity Mortgage Loan Asset-
Backed Certificates, Series Inds 2006-1 under a Pooling and Servicing
Agreement dated April 1, 2006.

Resolution of the competing valuations offered for the debtor's principal

residence was carried pending a determination of the debtor's opportunity to

avoid the mortgagee's lien, assuming that the Indymac's junior lien claim is

wholly unsecured under a § 506(a) analysis.

**<u>DISCUSSION</u>**

The relevant portions of the applicable statutes that govern this issue, 11

U.S.C. § 506(a)(1) and (d), provide as follows:

> (a)(1) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest . . .

> (d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless–

> (1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or

(2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

Under § 506(a)(1), a claim is bifurcated into two parts. The claim is secured to the extent of the value of the creditor's interest in the property, and unsecured to the extent that the amount of the claim exceeds the value of the creditor's interest in the property. Section 506(d) provides for a mechanism to avoid a lien that secures a claim that is not an allowed secured claim.

To resolve the issue presented, we will first review two Supreme Court cases critical to the issue, including <u>Dewsnup v. Timm</u>, 502 U.S. 410, 112 S. Ct. 773, 116 L.Ed.2d 903 (1992) and <u>Nobelman v. American Savings Bank</u>, 508 U.S. 324, 113 S. Ct. 2106, 124 L.Ed.2d 228 (1993). We will then canvass cases decided after <u>Dewsnup</u> on this issue, followed by an examination of the debtor's arguments, which focus particularly on the Third Circuit case of <u>In re McDonald</u>, 205 F.3d 606 (3d Cir.), <u>cert. denied</u>, 531 U.S. 822, 121 S. Ct. 66, 148 L.Ed.2d 31 (2000), and its import here.

I.    <u>Supreme Court Cases</u>.

A.    <u>Dewsnup v. Timm</u>.

-5-

In <u>Dewsnup</u>, the debtor sought to avoid the unsecured portion of a mortgagee's lien.  Citing to § 506(a), the debtor claimed that the creditor held an "allowed secured claim" only  "to the extent of the judicially determined value of their collateral."  <u>Id</u>. at 413, 112 S. Ct. at 776.  The value of the property was determined at trial to be $39,000, while the debt was approximately $120,000.  The debtor contended that § 506(a) served to bifurcate the mortgagee's claim into a secured portion in the amount of $39,000 and an unsecured portion in the amount of $81,000.  Reading sections 506(a) and 506(d) as "complementary" provisions, the debtor sought to "strip down" the mortgagee's lien to the value of its secured claim as determined under § 506(a).

In response, the creditor maintained that the application of § 506(d) should not be "rigidly tied" to § 506(a) and "that the words 'allowed secured claim' in § 506(d) need not be read as an indivisible term of art defined by reference to § 506(a), which by its terms is not a definitional provision."  <u>Id</u>. at 415, 112 S. Ct. at 777.  Instead, the respondent asserted that "the words should be read term-by-term to refer to any claim that is, first, allowed, and, second, secured."  <u>Id</u>.  Since the claim had been "allowed" as provided in § 502, and it was "secured by a lien with recourse to the underlying collateral," § 506(d) could not be used to avoid the lien.  <u>Id</u>.  To bolster its argument, the

-6-

creditor referenced the pre-Code understanding that liens passed through

bankruptcy unaffected, noting that there was "nothing in the Code's legislative

history that reflects any intent to alter that law." Id. at 416, 112 S. Ct. at 777.

Moreover, the creditor contended that the fresh start policy only applies with

respect to the debtor's personal liability, not to in rem liability.


Writing for the Court, Justice Blackmun began by citing the opposing

interpretations of § 506(d) as evidence that there was ambiguity in the

application of § 506.  The Court noted that if they were "writing on a clean

slate," they might have agreed that the term "allowed secured claim" should

have the same meaning in both section 506(a) and 506(d).  Id. at 417, 112 S.

Ct. at 778.  However, because of the stated ambiguity, the Court declined to

"depart from the pre-Code rule that liens pass through bankruptcy

unaffected." Id.  The Court held that § 506(d) does not allow the debtor to

"strip down" the mortgagee's lien, "because [the mortgagee's] claim is secured

by a lien and has been fully allowed pursuant to § 502." Id.


The Court expressed concern that the debtor's interpretation of § 506,

requiring bifurcation of the mortgagee's claim under § 506(a), would "freeze"

the mortgagee's claim at a set value, allowing any increase in the value of the

property to inure to the benefit of the debtor.  In effect, this interpretation of §

506 could result in a "windfall" to the debtor, at the expense of the mortgagee.

The Court believed that the better result would be to leave the lien on the

property undisturbed until payment or foreclosure.  The Court reasoned that

"[t]hat is what was bargained for by the mortgagor and the mortgagee. . . .

Any increase over the judicially determined valuation during bankruptcy

rightly accrues to the benefit of the creditor, not to the benefit of the debtor

and not to the benefit of other unsecured creditors whose claims have been

allowed and who had nothing to do with the mortgagor-mortgagee bargain."

Id.  The Court noted that this would be the result outside of bankruptcy and

they saw "no reason why [the mortgagee's] acquiescence in [the bankruptcy]

proceeding should cause him to experience a forfeiture of the kind the debtor

proposes."  Id. at 418, 112 S. Ct. at 778.  The Court remarked that "[i]t is true

that [the creditor's] participation in the bankruptcy results in his having the

benefit of an allowed unsecured claim as well as his allowed secured claim,

but that does not strike us as proper recompense for what petitioner proposes

by way of the elimination of the remainder of the lien."  Id.


Other than reorganization proceedings, the Court found that "no

provision of the pre-Code statute permitted involuntary reduction of the

amount of a creditor's lien for any reason other than payment on the debt."

Id. at 418-19, 112 S. Ct. at 779.  Recognizing that under the Bankruptcy Act,

liens passed through bankruptcy unaffected, the Court declined to grant what it characterized as a "broad new remedy against allowed claims" absent "the new remedy's being mentioned somewhere in the Code itself or in the annals of Congress." Id. at 420, 112 S. Ct. at 779.

Dewsnup thus draws a distinction between an "allowed secured claim" for purposes of § 506(a) and an "allowed secured claim" as used in § 506(d). See In re Hernandez, 175 B.R. 962, 964 (N.D.Ill. 1994)("In Dewsnup, . . . the Supreme Court decided that the phrase 'allowed secured claim' in Section 506(d) meant a claim which was both allowed and secured, regardless of the extent of the security."); In re Cunningham, 246 B.R. 241, 245 (Bankr. D.Md. 2000) ("By concluding that 'secured claim' merely refers to a claim secured by a lien, the Court effectively negated any argument that 'allowed secured claim' means the same in § 506(d) as in § 506(a)."). A claim is secured for purposes of § 506(a) to the extent of the value of the associated collateral. Under Dewsnup, an allowed claim is secured for purposes of § 506(d) simply because the claim is subject to a lien with recourse to collateral. Valuation is not a factor in the determination.

B.    Nobelman v. American Savings Bank.

The year following the <u>Dewsnup</u> decision, the Supreme Court, in

<u>Nobelman v. American Savings Bank</u>, 508 U.S. 324, 113 S. Ct. 2106, 124

L.Ed.2d 228 (1993), revisited the issue of lien modification, this time in a

Chapter 13 case.  In <u>Nobelman</u>, the Chapter 13 debtors sought to apply  §

506(a) to bifurcate an undersecured claim on their principal residence.  The

mortgagee filed a proof of claim in the amount of $71,335, while the value of

the debtors' residence was acknowledged to be only $23,000.  The debtors

proposed to divide the mortgagee's claim into a secured portion in the amount

of $23,000, representing the fair market value of the property, and an

unsecured portion of $48,335.  The debtors' modified Chapter 13 plan

proposed to cure the mortgage arrearage and to make payments toward the

"secured" portion of the bank's claim, while paying a zero dividend to

unsecured creditors, which included the bifurcated "unsecured" portion of the

bank's claim.  <u>Id</u>. at 326, 113 S. Ct. at 2108-09.  The debtors asserted that the

anti-modification provision in § 1322(b)(2) applied only to secured claims held

by the mortgagee against the debtor's principal residence, and that by

bifurcating the mortgagee's claim, the debtors' plan did not propose to modify

the secured portion of the claim.


Justice Thomas, writing for a unanimous court, acknowledged that the

debtors "were correct in looking to § 506(a) for a judicial valuation of collateral

-10-

to determine the status of the bank's secured claim." Id. at 328, 113 S. Ct. at

2110.  However, the Court determined that under § 1322(b)(2), which provides

in pertinent part that a Chapter 13 plan may "modify the rights of holders of

secured claims, other than a claim secured by a security interest in real

property that is the debtor's principal residence"  11 U.S.C. §1322(b)(2), the

modification of an undersecured claim against a debtor's principal residence is

proscribed.  Justice Thomas suggested that if the anti-modification provision

stated that "a plan may modify 'claims' or that the plan may not modify 'a

claim secured only by' a home mortgage", Nobelman, 508 U.S. at 328, 113 S.

Ct. At 2110, then resort to § 506(a) to determine the amount of the claim

might be required.  But because the provision focuses on the modification of

the "rights of holders" of secured claims, as long as the mortgagee is a "holder"

of a "secured claim", determined on the basis that the debtor's home retains

some value as collateral, the mortgagee's "rights", as reflected in the mortgage

contract between the mortgagee and the debtors, are protected from

modification.


    To conclude that an undersecured claim against a debtor's principal

residence may not be modified, the Court also observed that § 1322(b)(2) uses

the phrase "claim secured . . . by" rather than "secured claim", thus indicating

an intent "to encompass both portions of an undersecured claim." Id. at 331,

-11-

113 S. Ct. at 2111.  The Court found the bank's contractual rights applied to its claim as a whole.  The debtors "cannot modify the payment and interest terms for the unsecured component, as they propose to do, without also modifying the terms of the secured component."  Id.  The court stated:

> In other words, to give effect to § 506(a)'s valuation and bifurcation of secured claims through a Chapter 13 plan in the manner petitioners propose would require a modification of the rights of the holder of the security interest.  Section 1322(b)(2) prohibits such a modification where, as here, the lender's claim is secured only by a lien on the debtor's principal residence.

Id. at 332, 113 S. Ct. at 2111.

Thus, under Nobelman, if there is some value in the debtor's principal residence to which the creditor's lien can attach, the antimodification provision in § 1322(b)(2) will protect the creditor's rights.  That protection extends to both the secured and the unsecured components of the creditor's claim.

To recap, in Dewsnup, a Chapter 7 liquidation case, the Supreme Court concluded that the term "allowed secured claim" in § 506(a) has a different meaning than the same phrase in § 506(d).  Under § 506(d), a claim qualifies as an "allowed secured claim" if it is allowed as a claim and if the claim is

-12-

secured, in the sense that the creditor holds a security interest in the

collateral.  Valuation of the collateral is not an issue.  The Court recognized

that in a reorganization case, the result may be different.  In Nobelman, a

Chapter 13 reorganization case, the Court looked to § 506(a) to establish that

a claim is "secured," at least to the extent of the value of the collateral.  But

the Court concluded that a bifurcation between secured and unsecured claims

under  § 506(a) could not occur in a Chapter 13 case on a claim secured solely

by the debtor's principal residence, because the creditor's entire claim was

protected from modification under  § 1322(b)(2).


II.     Post Dewsnup Cases.


        Post Dewsnup, the question has arisen, as it does here, as to whether a

Chapter 7 debtor could "strip off", as opposed to "strip down", a wholly

unsecured lien pursuant to § 506(d).  The majority of courts addressing the

issue, led by the Fourth and Sixth Circuit Court of Appeals and the Ninth

Circuit Bankruptcy Appellate Panel, concludes that there is no difference

between a "strip off" and a "strip down", and that both quests for relief are

foreclosed by Dewsnup.  See, e.g., In re Talbert, 344 F.3d at 555; Ryan 253

F.3d at 778; In re Laskin, 222 B.R. 872 (9th Cir. BAP 1998).

For example, in <u>Ryan</u>, the Chapter 7 debtors filed a complaint seeking to strip off a wholly unsecured junior lien on their principal residence.  253 F.3d at 778.  They sought to distinguish <u>Dewsnup</u> as applying only in the context of a "strip down" of a partially secured lien.  The Fourth Circuit denied relief, concluding that "[t]he reasoning in <u>Dewsnup</u> is not ambiguous," 253 F.3d at 781, and that there is "no principled distinction to be made between the case sub judice [seeking to strip off a lien completely] and that decided in <u>Dewsnup</u> [seeking to strip down a partially secured lien]." <u>Id</u>. at 782.  The Fourth Circuit found the reasoning in <u>Dewsnup</u> to be "equally relevant and convincing" in both cases, <u>id</u>., and "'while the opinion may be the subject of scholarly criticism, it remains the law of the land.'" <u>Id</u>. at 783 (quoting <u>In Re Cunningham</u>, 246 B.R. at 246).  The court accepted

> the fact that in many cases junior lien holders may have little or no opportunity to recover all or even a part of their unsecured claims. Nevertheless, the parties bargained for their positions with knowledge that a superior lien existed.  Under this Chapter 7 proceeding, they are entitled to their lien position until foreclosure or other permissible final disposition is had.

<u>Id</u>.

The Sixth Circuit agreed with the <u>Ryan</u> decision in <u>In re Talbert</u>, 344 F.3d at 555, noting that the Chapter 7 debtor's attempt to connect sections 506(a) and 506(d) to bifurcate and strip down the unsecured portion of the creditor's

-14-

lien had been rejected by the Supreme Court in <u>Dewsnup</u>.  <u>Talbert</u> identified

three bases for the <u>Dewsnup</u> holding:

> (1) any increase in the value of the property from the date of the
> judicially determined valuation to the time of the foreclosure sale
> should accrue to the creditor;
>
> (2) the mortgagor and mortgagee bargained that a consensual lien
> would remain with the property until foreclosure; and
>
> (3) liens on real property survive bankruptcy unaffected.

<u>Id</u>. at 559 (citing <u>Dewsnup</u>, 502 U.S. at 417-18, 112 S. Ct. at 773).  Applying

these principles to an attempt to "strip off" a wholly unsecured lien, <u>Talbert</u>

explained that:

> [a]s in the case of a "strip down," to permit a "strip off" would mark
> a departure from the pre-Code rule that real property liens emerge
> from bankruptcy unaffected.  Also, as in the case of a "strip down,"
> a "strip off" would rob the mortgagee of the bargain it struck with
> the mortgagor, i.e., that the consensual lien would remain with the
> property until foreclosure.  In fact, in <u>Dewsnup</u>, the Court was
> persuaded by the creditors' argument that "'the fresh start' policy
> cannot justify an impairment of respondents' property rights, for the
> fresh start does not extend to an <u>in rem</u> claim against property but
> is limited to a discharge of personal liability."  Finally, as was true
> in the context of "strip downs," Chapter 7 "strip offs" also carry the
> risk of a "windfall" to the debtors should the value of the
> encumbered property increase by the time of the foreclosure sale.

<u>Id</u>. at 561 (citations omitted).  The court concluded that it was "not at liberty to

ignore the Supreme Court's reasoning, which Congress has made no apparent

attempt to modify or correct through legislative action." <u>Id</u>.  All that is

required is that the claim be "allowed" and "'secured in the ordinary sense,

that is, . . . [it] is backed up by a security interest in property, whether or not

the value of the property suffices to cover the claim.'" <u>Id</u>. (quoting <u>In re Cater</u>,

240 B.R. 420, 422 (M.D.Ala. 1999)).


In <u>Laskin</u>, the Chapter 7 debtors filed an uncontested motion to avoid a

wholly unsecured second deed of trust on their home pursuant to section

506(d).  <u>In re Laskin</u>, 222 B.R. 872 (B.A.P. 9th Cir. 1998).  The bankruptcy

court denied the motion and the debtors appealed.  The Ninth Circuit

Bankruptcy Appellate Panel distinguished the debtors' reliance on several

Chapter 13 cases, noting that for purposes of anti-modification provision

relating to debtors' homestead,  § 1322(b)(2), a secured claim is established by

reference to  § 506(a).  However, in the Chapter 7 context, a secured claim

under  § 506(d) is not established in the same way.  <u>Id</u>. at 875.  The court

noted that "[i]n contrast to Chapter 13, where claims must be allowed or

disallowed to determine what gets paid through the plan, and the would-be

secured creditor whose claim is allowed only as unsecured gets paid as an

unsecured creditor, the allowance of a secured claim, or determination of

secured status is meaningless in a Chapter 7 where the trustee is not

disposing of the putative collateral." <u>Id</u>. at 876.  The court explained that:

> Dewsnup teaches that, unless and until there is a claims allowance
> process, there is no predicate for voiding a lien under § 506(d).
> Absent either a disposition of the putative collateral or valuation of
> the secured claim for plan confirmation in Chapter 11, 12 or 13,
> there is simply no basis on which to avoid a lien under § 506(d).

Id.  Simply put, "§ 506(d) serves the function of voiding a lien [only] when the

claim it secures has not been allowed."  Id. (citing Dewsnup, 502 U.S. at 415-

16, 112 S. Ct. at 773.

> [W]hether the lien is wholly unsecured or merely undersecured, the
> reasons articulated by the Supreme Court for its holding in
> Dewsnup, 502 U.S. at 417, 112 S. Ct. 773-that liens pass through
> bankruptcy unaffected, that mortgagee and mortgagor bargained for
> a consensual lien which would stay with real property until
> foreclosure, and that any increase in value of the real property
> should accrue to the benefit of the creditor, not the debtor or other
> unsecured creditors-are equally pertinent.

Id.

A minority of cases have concluded that Dewsnup should be limited to its

facts, i.e. that it only applies in the case of a partially secured claim, and that

it does not control in the context of a wholly unsecured claim.  See, e.g., In re

Smith, 247 B.R. 191 (W.D.Va. 2000), aff'd, 1 Fed.Appx. 178 (4th Cir.), cert.

denied, 532 U.S. 1052, 121 S. Ct. 2194, 149 L.Ed.2d 1025 (2001); In re Yi,

219 B.R. 394 (E.D.Va. 1998); In re Lavelle, No. 09-72389-478, 2009 WL

4043089 (Bankr. E.D.N.Y. Nov. 19, 2009); In re Farha, 246 B.R. 547 (Bankr.

-17-

E.D.Mich. 2000); In re Zempel, 244 B.R. 625 (Bankr. W.D.Ky. 1999); In re

Howard, 184 B.R. 644 (Bankr. E.D.N.Y.1995).  For example, in In re Yi, the

debtors filed an adversary complaint in their Chapter 7 case seeking to avoid a

wholly unsecured third deed of trust on their property.  219 B.R. at 394.  The

value of the two senior deeds of trust on the property exceeded the stated

value of the debtors' interest in the property, and the debtors contended that

the third deed of trust was thus not an "allowed secured claim" pursuant to §

506(a) and therefore subject to avoidance under § 506(d).


     The district court agreed, labeling Dewsnup as "analogous" but not

"dispositive."  Id. at 397.  Focusing on the language of section 506(a), the court

determined that because there was no value to support the creditor's claim,

the claim was clearly not secured.  Id. at 397-98.  The court reasoned that

"'[w]here there is no value underlying the claim, there is not a secured claim,

despite the existence of a document to the contrary.'"  Id. at 398 (quoting

Wright v. Commercial Credit Corp., 178 B.R. 703, 707 (E.D.Va.1995)).  "In

other words, '[t]he code does not generally classify creditors based on the

existence of a piece of paper purporting to give a creditor rights in specified

collateral, but rather on whether a creditor actually holds a claim supported

by valuable estate property.'"  Id. (quoting In re Hornes, 160 B.R. 709, 715

(Bankr. D.Conn. 1993)).

-18-

Yi distinguished Nobelman's conclusion that a "claim . . . secured by a lien" includes both the secured and unsecured portions of the claim on the ground that in Nobelman, the bank was partially secured. Otherwise, "that phrase cannot logically be understood to include a lien that has no secured portion." Id. at 399. The court concluded that the Code clearly intended to treat undersecured and wholly unsecured claims differently. The court reasoned that if the policies identified in Dewsnup that liens pass through bankruptcy unaffected were strictly applied, "§ 506(d) would be read out of the statute; a lien would never be avoided, even if the full value of the lien exceeded the unsecured value of the property." Id. at 400 (emphasis in original).

It should be noted that the lower court decisions in Yi and Smith were superseded by the Fourth Circuit's decision in Ryan, and the Farha and Zempel cases were superseded by the Sixth Circuit's more recent decision in Talbert. Nevertheless, the minority cases opining that sections 506(a) and (d) must be read together, and concluding that in a Chapter 7 case, junior liens with no value underlying the claim may be avoided under § 506(d), are premised on sound principles of statutory interpretation, and would be controlling here if we were writing on a clean slate. We are not. The Dewsnup decision disregarded valuation considerations in assessing whether a claim

-19-

constituted an "allowed secured claim" that may be avoided under § 506(d),

"effectively negat[ing] any argument that 'allowed secured claim' means the

same in § 506(d) as in § 506(a)".  Cunningham, 246 at 245.  As the Fourth and

Sixth Circuits and the Ninth BAP Circuit have concluded, there is no

principled way to reconcile Dewsnup with a "strip off" of a wholly unsecured

claim under  § 506(d).  Ryan, 253 F.3d at 782.


III.    Debtor's Arguments.


        The debtor contends that because "stripping off" and "stripping down" are

not only different in degree, but also different in kind, Dewsnup should not

bar the voiding of a lien where the junior lien is wholly unsecured under a  §

506(a) analysis.  The debtor cites to the Third Circuit decision in In re

McDonald, 205 F.3d 606 (3d Cir.), cert. denied, 531 U.S. 822, 121 S. Ct. 66,

148 L.Ed.2d 31 (2000), in which Chapter 13 debtors were permitted to modify

a wholly unsecured mortgagee's claim by treating the entire amount due on

the junior mortgage as unsecured, avoiding the associated lien, and paying a

de minimis or zero dividend to the unsecured creditors in their proposed

Chapter 13 plan.  All six courts of appeal to address the question have

concluded that the anti-modification protection afforded by § 1322(b)(2) to

claims secured by the debtor's homestead does not extend to wholly

unsecured claims.  See, e.g., In re Zimmer, 313 F.3d 1220 (9th Cir. 2002); In re

Lane, 280 F.3d 663 (6th Cir. 2002); In re Pond, 252 F.3d 122 (2d Cir. 2001); In

re Tanner, 217 F.3d 1357 (11th Cir. 2000); In re Bartee, 212 F.3d 277 (5th Cir.

2000).  The debtor contends that the rationale of the McDonald case would  be

inconsistent with a ruling by a Third Circuit bankruptcy court that would

designate a claim that is wholly unsecured under a § 506(a) analysis as an

"allowed secured claim" that could not be avoided under § 506(d).


      In In re McDonald, the court started from the premise that  § 506(a)

applies in Chapter 13 cases to separate allowed claims into secured and

unsecured claims.  205 F.3d at 609.  The court reflected that while Nobelman

held that partially unsecured claims, secured only by an interest in real

property, could not be modified, the Nobelman court recognized that § 506(a)

must be consulted in the first instance to determine whether a claim is

secured or unsecured.  The McDonald court reasoned that "[o]nce we accept

that courts must apply § 506(a), then it follows, even under Nobelman, that a

wholly unsecured mortgage holder does not have a secured claim."  Id. at 611.

"Justice Thomas specifically said that the bank in Nobelman had a secured

claim 'because' the bank's lien still attached to some existing value in the

debtor's house."  Id.  As the Third Circuit explained, "[i]f a mortgage holder's

claim is wholly unsecured, then after the valuation that Justice Thomas said

-21-

that debtors could seek under § 506(a), the bank is not in any respect a holder of a claim secured by the debtor's residence." Id. at 612. "The bank simply has an unsecured claim and the antimodification clause does not apply." Id.

Similarly, the Fifth Circuit Court of Appeals, in In re Bartee, noted that "[i]f it is correct to 'look[ ] to § 506(a) for a judicial valuation of the collateral to determine the status of the bank's secured claim,' then it stands to reason that valuation will control the determination of the mortgagee's security interest–i.e., whether it is a secured or unsecured claim." 212 F.3d at 290. "In the case of a wholly undersecured junior mortgage, the valuation function of § 506(a) obviates the need to even consult § 1322(b)(2)." Id.   "Without an allowed secured claim, a creditor cannot invoke § 1322(b)(2)." Id.

The debtor's argument that Nobelman and McDonald compel the conclusion that a lien may be voided in a Chapter 7 case under § 506(d) where the lien does not attach to some existing value in the collateral must be rejected.  The opportunity to void a lien on a wholly unsecured claim depends upon whether the debtor's case is filed under Chapter 7 or Chapter 13.   In the Chapter 13 context, Nobelman requires resort to § 506(a) to determine whether a junior lienholder holds a secured claim for purposes of § 1322(b)(2).  In the Chapter 7 context, Dewsnup held that the definition of an "allowed secured

-22-

claim" for purposes of § 506(d) was independent of the § 506(a) determination.

Thus, the fact that there is no value in the collateral to reach the claim is

irrelevant.  For purposes of lien avoidance under § 506(d), the court may

consider only if the claim is allowed, and then whether it is secured, in the

sense that the creditor has recourse to the underlying collateral.  Here, the

lien sought to be avoided is both an allowed claim, and is secured by the

debtor's property.  The relief sought by the debtor must be rejected.

## **CONCLUSION**

The debtor's motion to modify and avoid the creditor's lien is denied.

Counsel for respondent shall submit an order in conformance herewith.

Dated:    July 1, 2010

_____
JUDITH H. WIZMUR
CHIEF JUDGE
U.S. BANKRUPTCY COURT

-23-